**UNITED STATES of America,**
**Plaintiff-Appellee,**

v.

**Reies Lopez TIJERINA and Jerry Noll,**
**Defendants-Appellants.**

**Nos. 3-68, 4-68.**

United States Court of Appeals
Tenth Circuit.

June 23, 1969.

John Quinn, U. S. Atty., (John A. Babington, Asst. U. S. Atty., was with him on the brief) for plaintiff-appellee.

Irving M. King, Chicago, Ill., (Morton Stavis, Newark, N. J., William Kunstler, New York City, Albert Gonzales, Santa Fe, N. M., and Beverly Axelrod, San Francisco, Cal., were with him on the brief) for defendants-appellants.

Before LEWIS, BREITENSTEIN and HICKEY, Circuit Judges.

BREITENSTEIN, Circuit Judge.

After a trial to the court without a jury, Tijerina and Noll were convicted of criminal contempt and each was sentenced to serve thirty days in jail and to pay a fine of $500. We held the case in abeyance to await the decision of the United States Supreme Court in Frank v. United States, 395 U.S. 147, 89 S.Ct. 1503, 23 L.Ed.2d 162 on the right of an accused in a contempt proceedings to a jury trial. The Frank decision, announced May 19, 1969, held that, if the "actual penalty is one which may be imposed upon those convicted of otherwise petty offenses," a jury trial is not required. Here the penalties were within the prescribed limit. See 18 U.S.C. § 1(3).

These proceedings are an outgrowth of the prosecution of Tijerina, Noll, and three others in the United States District Court for the District of New Mexico for federal offenses. See our decision in United States v. Tijerina, 10 Cir., 407 F.2d 349. In the disposition of that case "[t]he court and the parties were concerned with pretrial publicity and the impanelling of an impartial jury." Ibid. at 354. On October 17, 1967, a hearing was held with counsel present for all parties. The problem of pretrial publicity was discussed. Pre-

viously defense counsel had suggested that the court should make an order restricting extrajudicial statements. The court stated its intent to make such an order. Counsel for Tijerina then directed attention to a convention of the Federation of Free City States which would be held in a few days. Later the court furnished counsel with copies of the order which it proposed. It made no exception of the convention. No counsel made any objection and the order was entered. It covered the attorneys, the defendants, and the witnesses and forbade them to "make or issue any public statement, written or oral, either at a public meeting or occasion or for public reporting or dissemination in any fashion regarding the jury or jurors in this case, prospective or selected, the merits of the case, the evidence, actual or anticipated, the witnesses or rulings of the Court."[1] The order was by Judge Bratton who later presided over the criminal trial.

On October 21 and 22, 1967, the annual convention of Alianza Federal de los Pueblos Libres[2] was held in Albuquerque. Both Tijerina and Noll made speeches at the convention. On the basis of statements then made, the United States Attorney filed an application for an order requiring Tijerina and Noll to show cause why they should not be adjudged in contempt. See Rule 42(b), F. R.Crim.P., and 18 U.S.C. § 401(3). The application was made after the criminal case had gone to the jury. Judge Bratton issued an order to show cause before Judge Ewing T. Kerr, a United States District Judge for the District of Wyoming, who thereafter presided over the contempt proceedings. After a full evidentiary hearing, Judge Kerr made findings of fact and conclusions of law and held both Tijerina and Noll in contempt.

■ Tijerina and Noll attack the findings of the trial court that the statements with which they are charged were made at a public meeting. They insist that the convention was private and was attended only by members of Alianza and their invited guests. Estimates of the number present varied from 200 to 600. The only claimed restriction on those entering was identification by guards at the doors and payment of the required fee. Two police officers in plain clothes paid the $3.00 charge and entered. Two newspaper reporters and a radio newscaster entered upon identifying themselves. The auditorium was set up with a TV camera and a loudspeaker system. The finding that the meeting was public has substantial sup-

1. The full text of the order follows:
"This matter coming on for consideration by the Court upon its own Motion, and it appearing to the Court that there is a reasonable likelihood that prejudicial news prior to trial would render more difficult the impaneling of a fair and impartial jury and would tend to prevent a fair trial and that the Court should enter an order seeking to prevent difficulties in these regards: Now, Therefore,
IT IS BY THE COURT ORDERED:
1. This Order is binding on all attorneys, both for the Government and the defense, on each of the defendants, and on each witness for both sides. It shall remain in force during the pendency of this action in this court.
2. No party covered by this Order shall make or issue any public statement, written or oral, either at a public meeting or occasion or for public reporting or dissemination in any fashion regarding the jury or jurors in this case, prospective or selected, the merits of the case, the evidence, actual or anticipated, the witnesses or rulings of the Court. This Order does not apply to statements made, evidence given, or pleadings filed in this action. Of course, all proceedings in the action are and will continue to be public and matters of public record.
3. No person covered by this Order shall avoid the effect of it by actions which indirectly, but deliberately bring about a violation of this Order.
A copy of this Order shall be served on each party named above immediately upon its entry, and, as each witness is subpoenaed, a copy of this Order shall be served on him with the service of a subpoena."

2. The Alianza Federal de Mercedes mentioned in our opinion in the criminal case, 407 F.2d 351, had been dissolved and the new organization created.

port in the record and is not clearly erroneous.

██ The meeting was held in the Civic Auditorium of Albuquerque. At the request of local police officers and without the knowledge of those in charge of the convention or of either Tijerina or Noll, auditorium personnel installed a tape recorder to record the proceedings. The machine failed to work on the first day but did on the second. The statement charged to Noll and one of the statements charged to Tijerina were preserved on the tape. The argument is that the recording was an unreasonable search and seizure in violation of the Fourth Amendment. We are not persuaded. Reliance on the electronic surveillance cases is misplaced. Unauthorized electronic eavesdropping upon private conversations is a search and seizure which violates the Fourth Amendment. See Katz v. United States, 389 U.S. 347, 88 S.Ct. 507, 19 L.Ed.2d 576, and Desist v. United States, 394 U.S. 244, 89 S.Ct. 1030, 22 L.Ed.2d 248; cf. Lopez v. United States, 373 U.S. 427, 83 S.Ct. 1381, 10 L.Ed.2d 462. We are concerned here with statements made at a public meeting to which reporters were admitted. Our attention is directed to no decision holding that the use of mechanical recordings of public proceedings violates the Fourth Amendment. The tapes are a means of corroborating the recollections of those present. We see no constitutional distinction between the receipt of testimony of those present and the admission of the tapes which recorded what was said.

Appellant Tijerina objects to the receipt of testimony by a newspaper reporter, Beier, of statements made by Tijerina on the first day of the convention when the tape recorder was not functioning. Tijerina spoke in Spanish. Beier does not speak or understand Spanish. Martinez, a police officer who spoke Spanish, sat next to Beier and translated certain portions of the speech for Beier who made notes of the gist of what the officer told him. After the speech, Beier read his notes to a Spanish-speaking reporter, Herrera, who confirmed the notes as containing the statements which he, Herrera, heard Tijerina make. Herrera so testified at the trial. On the same day as the speech, Beier discussed in English with Tijerina his remarks regarding Judge Bratton. Beier did not show Tijerina the notes but questioned him about "his mentioning Judge Bratton and Judge Bratton's order." Tijerina made no denial and said that "it wasn't for discussion for the press."

██ The argument now made is that the hearsay objection to Beier's testimony should have been sustained. In our opinion the testimony was not inadmissible hearsay. We have held that "testimony is not hearsay when it is to prove only that a statement was made and not the truth of the statement." Creaghe v. Iowa Home Mutual Casualty Company, 10 Cir., 323 F.2d 981, 984. See also Aikins v. United States, 10 Cir., 282 F.2d 53, 57, and Standard Oil Company v. Standard Oil Company, 10 Cir., 252 F.2d 65, 75, 76 A.L.R.2d 600. The testimony of Beier was offered to prove what Tijerina had said and the only question of credibility related to the credibility of Beier. We are concerned with the fact, not the truth, of the statement. Beier was thoroughly cross-examined by defense counsel. The court chose to believe him. The argument that officer Martinez spoke idiomatic New Mexican Spanish while Tijerina used "pure" Spanish is unpersuasive. Tijerina was speaking in Spanish to a large assembly of Spanish-speaking New Mexicans. The fact that Beier got his information through an interpreter goes only to the weight of the evidence. We believe that Beier's testimony was properly received.

The next argument is that the statements charged do not violate the order as a matter of law. The trial court specifically found three statements violative of the order. One made by Tijerina on

the opening day of the Alianza convention was:

"U. S. District Judge Howard C. Bratton last week issued an order against any of the defendants, witnesses and lawyers not to talk about the case outside of the courtroom. If Judge Bratton asks me I'll tell him I told the witnesses what to say and what to do. I may get arrested. This is fine. It's all right with me because I don't want Judge Bratton to judge this case."

The statement of Tijerina on the following day was:

"For example, the trial of Reies is coming up and Reies Tijerina is going to be judged the 6th of November and that is an important issue. We know that the Judge has taken the power in his own hands. We know that the Judge is using the law to take vengeance and drink blood and humiliate our race. In this case we can advise the Negro pueblo of what is going on and they can come out and march around the court house. This is their business."

The statement of Noll is much longer. After referring to the events at the Echo Amphitheater and asserting that the United States had declared that he and his codefendants "are criminals and that it was going to try us and put us to death," he said:

"War with the U. S. is imminent, for during the last week of August, I caused to be sent to the self-styled President of the United States of America, an ultimatum which he received August 31st. This ultimatum, in essence, declared that if and when the alleged cases in the U. S. imposed force relative to the events at Echo Amphitheater and Tierra Amarilla should commence for trial, a state of war should exist as of that date between the Kingdom of the Indies and the United States of America. According to the newspaper, the tentative date for the war to commence is November 6th, but I think they are going to try to postpone it. Therefore, prepare yourselves for war. I suggest that a scorched earth policy be used; for every nation that used this policy were victorious. We must burn every tree, every blade of grass, every building within the kingdom. Let them burn, burn, burn." [3]

The record in the criminal trial [4] shows a continuing and pervading concern of both court and counsel over the effect which publicity might have on a fair trial of that case. This appears in motions of the defendants for change of place of trial and for continuances and from various colloquies between court and counsel. The hazard arose to some extent from published and broadcast reports of the Echo Amphitheater incidents which were the basis of the then pending federal charges, but more importantly from publicity relating to events at Tierra Amarilla which caused state charges to be made against some of the defendants, and from a variety of public statements made by a number of individuals.

The trial court found that the statements of Tijerina and Noll were wilful and deliberate; and that the statements "created a danger to the rights of these defendants and their co-defendants and the Government to a fair and impartial trial by jury * * *."

In colorful and demagogic language Tijerina and Noll addressed their followers on the merits of the case. Tijerina boasted that he "told the witnesses what to say and what to do." He charged that the judge "is using the law to take vengeance and drink blood and humilate our race." Noll said that the United States has declared that he and his co-defendants "are criminals and

3. The reference to the events at Echo Amphitheater relates to the activities which caused the then pending federal charges. The reference to Tierra Amarilla is to an unrelated state case.

4. In the contempt proceedings the trial court said that it would take judicial notice of the file in the criminal case.

that it was going to try us and put us to death." Tijerina urged a "march around the court house" and Noll suggested "a scorched earth policy." In the context in which they were made such public utterances while a criminal trial was pending are not compatible with the concept of a fair trial. We are aware of the recent admonition that appellate courts "must constantly have in mind that their function is not to decide factual issues *de novo*." Zenith Radio Corporation v. Hazeltine Research, Inc., 395 U.S. 100, 89 S.Ct. 1562, 23 L.Ed.2d 129. The findings of the trial court are not clearly erroneous. On the entire evidence we are not "left with the definite and firm conviction that a mistake has been committed." United States v. United States Gypsum Co., 333 U.S. 364, 395, 68 S.Ct. 525, 542, 92 L.Ed. 746. We are convinced that if the order was valid, Tijerina and Noll violated it.

■ The defendants argue that the order forbidding extrajudicial statements violates their rights under the First, Fifth, and Sixth Amendments. At the outset it must be noted that in colloquies between the court and counsel an order against extrajudicial statements was discussed. Mention was made of the forthcoming Alianza Convention. The court disclosed to counsel the order which it intended to enter and which did not except the convention. No objection was made to the order entered and no effort was made to get it modified or reviewed. When a court has jurisdiction of the subject matter and person, its orders must be obeyed until reversed for error by orderly review. See Dunn v. United States, 10 Cir., 388 F.2d 511, 513, and cases cited in footnote 2. This should dispose of the matter, but the circumstances of the case are such that the constitutional claims merit discussion.

■ The prime argument of the defendants is that the order infringes on the defendants' rights of free speech guaranteed by the First Amendment. Many volumes have been written on the subject of fair trial and free speech.

The problem here is unusual in that the defendants are complaining against the application of such an order to them. The theory of the defense seems to be that because the order was entered for their protection, they cannot be charged with a violation. We do not agree. The public has an overriding interest that justice be done in a controversy between the government and individuals and has the right to demand and expect "fair trials designed to end in just judgments." Wade v. Hunter, 336 U.S. 684, 689, 69 S.Ct. 834, 837, 93 L.Ed. 974; and Mares v. United States, 10 Cir., 383 F.2d 805, 808 and 809. This objective may be thwarted unless an order against extrajudicial statements applies to all parties to a controversy. The concept of a fair trial applies both to the prosecution and the defense.

The defendants say that the order violates the First Amendment because it fails to meet the clear and present danger test. See Bridges v. California, 314 U.S. 252, 263, 271, 62 S.Ct. 190, 86 L.Ed. 192; Pennekamp v. Florida, 328 U.S. 331, 347–348, 66 S.Ct. 1029, 90 L.Ed. 1295; Craig v. Harney, 331 U.S. 367, 376, 67 S.Ct. 1249, 91 L.Ed. 1546; and Wood v. Georgia, 370 U.S. 375, 383–385, 82 S.Ct. 1364, 8 L.Ed.2d 569. None of the foregoing decisions considered a situation where the contempt arose from the violation of an order. They were all concerned with extrajudicial statements which, in the absence of a prohibitive order, were said to obstruct the administration of justice and have an adverse effect on the right to a fair trial. Here we have the violation of a court order.

■ Counsel attack the order on the ground that it is not based on a clear and present danger. The order is based on a "reasonable likelihood" of prejudicial news which would make difficult the impaneling of an impartial jury and tend to prevent a fair trial. We believe that reasonable likelihood suffices. The Supreme Court has never said that a clear and present danger to the right of a fair trial must exist before a trial court can forbid extrajudicial statements about the trial.

The responsibility of a trial judge to exercise the control necessary to assure a fair trial is emphasized by the decision in Sheppard v. Maxwell, 384 U.S. 333, 86 S.Ct. 1507, 16 L.Ed.2d 600. The Court said that control of the sources of prejudicial news items is "concededly within the court's power" and that the court "might well have proscribed extrajudicial statements by any lawyer, party, witness, or court official which divulged prejudicial matters." Id. at 361, 86 S. Ct. at 1521.

The Court said further, Id. at 363, 86 S.Ct. at 1522:

"The courts must take such steps by rule and regulation that will protect their processes from prejudicial outside interferences. Neither prosecutors, counsel for defense, the accused, witnesses, court staff nor enforcement officers coming under the jurisdiction of the court should be permitted to frustrate its function."

Defense counsel argue that the quoted statements from Sheppard are dicta and have no binding force. We are not persuaded. The Court did not make gratuitous remarks which were not relevant to the issue for decision. In our opinion it established guidelines necessary to assure a fair trial in a case which attracted wide publicity. The failure of the trial court in Sheppard to apply and use the procedures, which the Supreme Court said were appropriate, resulted in a reversal.

The ultimate question is whether the application to the defendants of an order against extrajudicial statements violates their rights of freedom of speech. The defense argument necessarily places freedom of speech in a preferred position above fair trial. Some decisions of the Supreme Court place First Amendment rights in a preferred position. See e.g. Thomas v. Collins, 323 U.S. 516, 530, 65 S.Ct. 315, 89 L.Ed. 430, and discussion of the subject in concurring opinion of Justice Frankfurter in Kovacs v. Cooper, 336 U.S. 77, 95–96, 69 S.Ct. 448, 93 L.Ed. 513. This preferred position has never been approved in a case where a balance must be had between free speech and fair trial. Indeed, the Court has awarded the preference to fair trial. In Estes v. Texas, 381 U.S. 532, 540–541, 85 S.Ct. 1628, 1632, 14 L.Ed.2d 543, the Court said:

"We have always held that the atmosphere essential to the preservation of a fair trial—the most fundamental of all freedoms—must be maintained at all costs. Our approach has been through rules, contempt proceedings and reversal of convictions obtained under unfair conditions. Here the remedy is clear and certain of application and it is our duty to continue to enforce the principles that from time immemorial have proven efficacious and necessary to a fair trial."

The order against extrajudicial statements was designed to maintain the atmosphere essential to the preservation of a fair trial, "the most fundamental of all freedoms." Both the defendants and the public have the right to expect that justice will be done. The defendants have the protection of the order and the responsibility to obey it. Their rights under the First Amendment were not infringed.

The Fifth Amendment argument is that the order is so broad and vague that it denies due process. We are not so persuaded. The order specifies the persons who are affected, the time when it is in effect, and the conduct which is forbidden. If greater particularity were needed, the defendants could have sought a clarification. They did not do so.

The Sixth Amendment argument is even less convincing. The guarantee of a public trial means a public trial in the courthouse, not in a convention hall.

Affirmed.