John SCKORHOD and Mary Ann McGivern, Appellants,

v.

Captain Dale STAFFORD, Respondent.

No. 37280.

Missouri Court of Appeals,
St. Louis District,
Division Four.

March 1, 1977.

Motion for Rehearing and for Transfer Denied April 15, 1977.

Application to Transfer Denied June 14, 1977.

Robert D. Benjamin, American Civil Liberties Union of Eastern Missouri, St. Louis, Francis L. Ruppert, American Civil Liberties Union of Eastern Missouri, Clayton, for appellants.

F. Douglas O'Leary, Moser, Marsalek, Carpenter, Cleary, Jeackel, Keaney & Brown, St. Louis, J. H. Cunningham, Jr., St. Louis, for respondent.

ALDEN A. STOCKARD, Special Judge.

Plaintiffs have appealed from the judgment of the Circuit Court of St. Louis County dismissing their petition for a declaratory judgment and an injunction.

Appellants alleged that on March 6, 1974, they and others, totaling about 20 persons, "peaceably assembled and gathered on a public street" in front of or near the home of the president of People's Liquor, Inc. doing business as 905 Liquor Stores, for the purpose of expressing their "individual and collective feeling, thought, and support" of certain "ideas and beliefs," not otherwise described, presented by the United Farm Workers of America in opposition to "certain principles and practices," not otherwise described, of 905 Liquor Stores. They alleged that the method of expression was in the form of singing and the "disseminating and leafletting" of literature, and that the purpose and means of appellants' expression are "protected rights" provided by the First Amendment of the Constitution of the United States and the Constitution of Missouri insuring freedom of speech and assembly. Appellants then alleged that respondent, as Chief of Police of Ladue, Missouri, and other police officers under his authority and command "were present when petitioners arrived * * * and remained throughout the assembly," that they "constantly took photographs and video-taped petitioners and others present" throughout the demonstration, and that the actions of respondent and his agents "were intended and calculated to [and did] harass and intimidate petitioners and to otherwise discourage and chill the petitioners from the exercise of their constitutional rights of free speech and assembly." Appellants further alleged "on information and belief" that "identifying information" concerning appellants has been "disseminated and sent by respondent through a national data collection and/or computer network" to participating local, state, and federal law enforcement agencies and that the photographs and videotapes were taken for the express purpose of "present and future criminal identification" and are "designed to subject [appellants] to the immediate and looming fear of retaliation or reprisal, unwarranted suspicion and unjustified aspersions cast upon their integrity by local or foreign police officers." Finally, appellant alleged that the "purported policy" of respondent to photograph and videotape all demonstra-

tions "has been applied and enforced upon only petitioners" and they are thereby denied equal protection under the law and such actions comprise "an invidious and capricious discrimination" against appellants.

The prayer for relief was for a declaratory judgment that (1) the "above stated actions of respondent [are] unlawful and a violation of the civil liberties" of appellants; and (2) that a "mandatory and permanent injunction" be issued to (a) "cause respondent to cease and desist now and forever from directing, authorizing or doing of the * * * activity complained of," (b) "compel respondent to turn over to petitioners any and all photographs, negatives of photographs, videotapes, sound tape recordings, and all information concerning petitioners taken as a fruit of respondent's * * * activity complained of" and (c) compel respondent to "totally and permanently" expunge from any local or national law enforcement computer or data storage system any record of appellants' activity as described in the petition.

We first note that there is no allegation, aside from the constitutional challenge, that respondent was not authorized as Chief of the Police Department of the City of Ladue to take the action alleged, or that the taking of pictures and the use of videotape in anyway interfered with appellants in their attempt to express their "individual and collective feeling [and] thought."

Appellants contend that "police officers had no authority to take photographs, collect personal data or record the actions of citizens where police have no cause to believe that illegal acts are occurring or will occur." This theory is, in substance, what has been termed "The Total Privacy Concept."

Appellants summarize their contention as follows: "The constitutional objection to respondent's photographic surveillance is that it puts a very real burden on Appellants' exercise of their First Amendment rights," and they then assert that assuming respondent has the authority to conduct photographic surveillance, "the courts may not 'balance' away First Amendment rights in

response to a claim of governmental necessity * * * [and] First Amendment activity cannot be curtailed even to facilitate the regulation of conduct within the sphere of legitimate governmental concern." We shall mention here that neither we nor the United States Supreme Court agrees with the latter assertion of appellants. In *Elrod v. Burns*, 427 U.S. 347, 96 S.Ct. 2673, 49 L.Ed.2d 547 (1976), it was stated that "the prohibition on encroachment of First Amendment protections is not an absolute. Restraints are permitted for appropriate reasons."

We also note that the demonstration conducted by appellants was held on a public street, and it was conducted for the express purpose of obtaining publicity. Unquestionably, any private citizen or member of the news media would have had the right to take pictures of the demonstrators, and then retain those pictures for future reference and disseminate copies to others. Appellants necessarily contend that those activities, permissible by others, should not be permissible when done by members of the police.

While this case is one of first impression in the appellate courts of this State, it is not without precedent in other jurisdictions.

In *Laird v. Tatum*, 408 U.S. 1, 92 S.Ct. 2318, 33 L.Ed.2d 154 (1972), the complainants alleged that the army's surveillance of lawful and peaceful citizen political activity constituted a chilling effect on their First Amendment rights. The court likened the activities of the army in the circumstances to that of a police force, and stated that the conduct "consisted essentially of the collection of information about public activities that were thought to have at least some potential for civil disorder, the reporting of that information to Army Intelligence headquarters * * *, the dissemination of [those] reports from headquarters to major Army posts around the country, and the storage of the reported information in a computer data bank * * *." The court defined the issue as " * * * whether the jurisdiction of a federal court may be invoked by a complainant who alleges that

the exercise of his First Amendment rights is being chilled by the mere existence, without more, of a governmental investigative and data-gathering activity that is alleged to be broader in scope than is reasonably necessary for the accomplishment of a valid government purpose."

The Supreme Court ruled that "to entitle a private individual to invoke the judicial power to determine the validity of executive or legislative action he must show he has sustained or is immediately in danger of sustaining a direct injury as the result of that action * * *." The court added that the claim "simply stated, is that the [the complainants in that case] disagree with the judgments made by the Executive Branch with respect to the type and amount of information the Army needs * * *." In commenting on the alleged "chilling" effect, the court stated that it "may perhaps be seen as arising from [complainants'] very perception of the system as inappropriate to the Army's role under our form of government, or as arising from [their] belief that it is inherently dangerous for the military to be concerned with activities in the civilian sector, or as arising from [complainants'] less generalized yet speculative apprehensiveness that the Army may at some future date misuse the information in some way that would cause direct harm to [complainants]." It then held that "Allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or threat of specific future harm; * * *."

In *Anderson v. Sills,* 56 N.J. 210, 265 A.2d 678 (N.J.1970), the complainants sought a declaratory judgment that their First Amendment rights of speech and association were violated by the preparation and dissemination to local law enforcement officials of a memorandum entitled "Civil Disorders—The Role of Local, County and State Government." After reviewing the recent history of severe civil disorder in that state, the court commented that the "police function is pervasive," and is not limited to the detection of past criminal events, but of at least equal importance is

the "responsibility to prevent crime," and that in the then current scene the preventive role required an awareness of group tensions and preparations to head off disasters as well as to deal with them if they appear. The court commented that "To that end the police must know what forces exist, what groups or organizations could be enmeshed in public disorders. * * * The police interest is in the explosive possibilities and not in the merits of the colliding philosophies." The court further declared: "Here we are dealing with the critical power of government to gather intelligence to enable it to satisfy the very reason for its being—to protect the individual in his person and things. The question in the case is not merely whether there are some individuals who might be 'chilled' in their speech and associations by reason of the police activity here involved. Rather the critical question is whether that activity is legal and although the amount of 'chill' might in a given case be relevant to the issue of legality, the fact of 'chill' is not itself pivotal." The court then concluded that "The First Amendment itself would be meaningless if there were no constituted authority to protect the individual from suppression by others who disapprove of him or the company he keeps. Hence the First Amendment rights must be weighed against the competing interests of the citizen. If there is no intent to control the content of speech an overriding public need may be met even though the measure adopted to that end operates incidentally to limit the unfettered exercise of the First Amendment right. * * * If a properly drawn measure is within the power of government, it is no objection that the exercise of speech or association is thereby 'chilled.' "

■ Appellants allege no act of respondent at the time of the demonstration except that he took or caused to be taken photographs, or pictures by use of videotape, of appellants while they were in a public place engaging in activity which had as its purpose to attract as much attention as possible. This was not illegal or improper conduct on the part of the police, and if a

"chill" resulted, as stated in *Fifth Avenue Place Parade Committee v. Gray,* 480 F.2d 326 (2nd Cir. 1973), "The shivering \* \* \* was self-induced." There is no allegation that there was any interference with the demonstration except the conclusionary statements that the acts harassed, discouraged and chilled appellants. But as stated in *Laird v. Tatum,* supra, mere allegations of a subjective "chill" are not an adequate substitute for the claim of specific harm or threat of specific future harm. See also *Donohoe v. Duling,* 465 F.2d 196 (4th Cir. 1972). Also, as ruled in *Anderson v. Sills,* supra, it is immaterial that some "chill" resulted from the presence of the police and their lawful activity. The presence of police officers walking their "beat" or riding in "prowl cars" undoubtedly "chill" some who would otherwise speak or act more freely. Surveillance by the police, without more, of public meetings is a proper police function and has been sustained by the courts. *United States v. Tijerina,* 412 F.2d 661 (10th Cir. 1969); and *United States v. McLeod,* 385 F.2d 734 (5th Cir. 1967). See also *Socialist Workers Party v. Attorney General,* 419 U.S. 1314, 95 S.Ct. 425, 42 L.Ed.2d 627 (1974). It is basic that the executive branch may gather whatever information it reasonably believes to be necessary to enable it to perform the police roles, detectional and preventive, and it is not the prerogative of the judiciary at the behest of the super-sensitive, or those who in good faith may have a different perception of the role of the police, to sit in judgment of each administrative decision made by those trained in their highly specialized field. The judiciary may properly interfere only in the event of illegal conduct or gross arbitrariness, and there are no facts alleged from which either may be found in this case.

Appellants next assert that "police officers have no authority to retain and/or disseminate or share photographs, records, or any personal identifying information about citizens when that data pertains to no threatened or actual illegal activity or acts and where there has been no arrest effected."

■ Most of appellants' argument is based on the assumption that the taking of photographs and the making of videotapes were unlawful, but we have held otherwise. However, they do contend that even if this court should rule that respondent "had the authority to act as he has," it does not follow that he has authority to "retain those records." For an excellent discussion of the right of police officials to retain identification records of persons, see *Walker v. Lamb,* 254 A.2d 265 (Del.1969), and particularly the comment that "this is a field in which the police have broad discretionary powers which will not be disturbed by the courts save under some exceptional circumstances." Appellants have not alleged facts from which "exceptional circumstances" could be found.

■ Reference is made by appellant to § 610.100, Laws of Missouri 1973, p. 502, known as the "Sunshine Law." That statute provides that "If [a] person is arrested and not charged with an offense against the law within thirty days of his arrest, all records of the arrest and of any detention or confinement incident thereto shall thereafter be closed records to all persons except the person arrested." Further provision is made for records to be "expunged" in certain areas when no conviction is had within one year. This statute has no relevance to the issue before us. There were no arrests made in this case. Appellants argue, however, that by analogy the courts should grant the relief requested. That argument might be appropriate to the legislative branch of government but it affords no basis for judicial relief.

■ At most, appellants assert that the retention, and possible future dissemination of the photographs and videotapes, would "chill" the exercise of their constitutional rights of free speech and assembly. But, by reference again to *Laird v. Tatum,* supra, "allegations of a subjective 'chill' are not an adequate substitute for a claim of specific present objective harm or a threat of specific future harm." Appellants allege no more than that the photographs and video-

tapes were taken for the express purpose of "present and future criminal identification," a proper use of them, and that they "subject [appellants] to the immediate and looming fear of retaliation or reprisal * * suspicion and unjustified aspersions." These are no more than conclusionary statements which are speculative as to future occurrences. In *Laird v. Tatum,* supra, the court reviewed certain cases in which it was held that governmental action infringed First Amendment rights, but it added that those "decisions have in no way eroded the 'established principle that to entitle a private individual to invoke the judicial power to determine the validity of executive or legislative action he must show that he has sustained or is immediately in danger of sustaining a direct injury as the result of that action * * *.'" Appellants' petition is deficient in this respect.

There is no point in appellants' brief pertaining to the claim of denial of equal protection. We consider it abandoned.

Judgment is affirmed.

SMITH, P. J., and NORWIN D. HOUSER, Special Judge, concur.