Samuel ASARO, Plaintiff, Appellant,

v.

Carlo PARISI, Defendant, Appellee.

No. 5837.

United States Court of Appeals
First Circuit.

Jan. 16, 1962.

5.

---

Morris D. Katz, Boston, Mass., for appellant.

James A. Whipple, Boston, Mass., with whom Kneeland & Splane, Boston, Mass., was on brief, for appellee.

WOODBURY, Chief Judge.

The plaintiff-appellant, a seaman and fisherman, was injured in the course of his employment as a member of the crew of the defendant-appellee's fishing vessel when he undertook to hoist a heavy net from a wharf in Gloucester, Massachusetts, at which his vessel was moored, to the deck by means of what is called a gilson.[1] He filed a complaint in the court

---

1. The word is not found in Webster's New International Dictionary, Second Edition, but is apparently in common use by fishermen. Its spelling seems to vary from "gilson" to "jillsen." It is a steel wire cable about ¾" in diameter and about 100' long used for hoisting purposes. It runs from the winch mounted amidships on fishing vessels to a block attached near the top of the foremast and then down to the deck. At that end a hook is attached for use in hoisting fishing gear and other objects.

below in three counts, one for negligence under the Jones Act, 46 U.S.C.A. § 688, a second for unseaworthiness under the general maritime law and a third for maintenance and cure. The first two counts were tried by jury which by direction returned a special verdict. In answer to specific questions submitted by the court without objection, the jury found that the defendant had been negligent and that his negligence was a proximate cause of the plaintiff's injuries, that the defendant's vessel was unseaworthy but that its unseaworthiness was non-causal, that the plaintiff's own negligence had contributed to his injuries to the extent of 75% and that his total damages amounted to $12,000. On this verdict the court below entered judgment for the plaintiff on the first count for $3,000 and judgment for the defendant on the second count. It also entered a judgment for the plaintiff on the third count for maintenance and cure.

This appeal by the plaintiff below is directed at the above judgment only insofar as counts one and two are concerned. That is to say, he challenges the propriety of the jury's verdict for the defendant on count two and its finding of his 75% contributory negligence on count one. His contentions are that the court below committed reversible error in its charge and in the admission of certain evidence.

There is no substantial dispute over the basic evidentiary facts. Stated most favorably to the plaintiff they are as follows: The vessel's net having been damaged on a previous trip and mended by crew members on the wharf, the plaintiff was ordered by the mate to participate in hoisting it back on board in preparation for the next trip. He was told to go to the port drumhead of the winch and use the gilson for that purpose. Crew members on the wharf placed the hook on the end of the gilson through a strap around the rolled-up net and passed the word to hoist the net on board. Upon receipt of a signal to go ahead from another crew member, the plaintiff took about four turns of the gilson around the port drumhead and taking in the slack hoisted the net from the wharf and swung it over the forward deck, where two crew members stood to receive it and guide it into position for stowing along the rail. At this juncture a steel spur or splinter on the gilson, which had been in use for some time and was worn, pierced the plaintiff's right hand causing him instinctively to let go with that hand. He was unable to keep sufficient strain on the gilson with only his left hand and as a result the turns taken around the drumhead began to jump off. Fearing for the safety of the men on the foredeck, who he said were standing under the net, the plaintiff grabbed the gilson again with his right hand in the endeavor at least to slow the descent of the net but, without having any mechanical advantage from the winch he could not do so, for the net weighed between one and two thousand pounds. The gilson ran through the plaintiff's clenched hands until his left hand was caught on the steel ends of an untaped splice and he was lifted and flung forward onto the fore deck and against an iron bar near the hatch.

The plaintiff-appellant contends that on this evidence he cannot as a matter of law be charged with contributory negligence because it conclusively establishes that he acted in an emergency not created by his own antecedent negligence in an attempt to rescue the two crew members on the fore deck from their peril from the falling net. This contention rests upon a misunderstanding of the emergency doctrine.

The plaintiff's freedom from antecedent negligence is not altogether clear. It could be found that he knew the men on the fore deck were standing in a place of danger when he started to hoist the net and there is no evidence that he shouted to them to get out from under. However, even if we assume that the emergency was not created by the plaintiff's fault, it would not follow as a matter of law that the plaintiff could not be charged with subsequent negligence. The fact that one acts in an emergency

he has not caused, even to save another from danger, is only a factor or circumstance to be considered in determining due care, it being quite naturally assumed that the ordinary man of average prudence would not and could not reasonably be expected to act under tension with the same care, forethought and deliberation as ought to be expected of such a person when not acting under stress.

This is the rule clearly stated by the American Law Institute, Restatement, Torts § 470, upon which the plaintiff mistakenly relies, which reads: "The fact that the plaintiff is acting in an emergency not created by his own antecedent negligence is a factor to be taken into account in determining whether his conduct is free from contributory negligence." The court's charge to the jury in accordance with this rule is correct.

■ The plaintiff-appellant also objected to a portion of the charge in which the court told the jury that it could not find the plaintiff guilty of contributory negligence if it found that in using a defective, unsafe or inadequate gilson he was acting under the orders of his superior " * * * unless you find that his superiors did not know of the defective condition or in the exercise of reasonable care would not have known of the defective condition and you find that the plaintiff in the exercise of due care should have told his superiors about it."

In vacuo this instruction might, as the appellant contends, be misunderstood as informing the jury, contrary to the rule in Mitchell v. Trawler Racer, Inc., 362 U.S. 539, 80 S.Ct. 926, 4 L.Ed.2d 941 (1960), that a seaman is under some sort of duty to discover and report unseaworthy conditions on his vessel and for breach of that duty is barred from recovery. In its context, however, we do not think the instruction reasonably could or would have been so misunderstood, for before it was given the jury had been fully, carefully, accurately and without objection instructed as to the shipowner's duties under the Jones Act and the general maritime law. And the jury had also been told in accordance with The Arizona v. Anelich, 298 U.S. 110, 56 S.Ct. 707, 80 L.Ed. 1075 (1936), and Socony-Vacuum Oil Co. v. Smith, 305 U.S. 424, 59 S.Ct. 262, 83 L.Ed. 265 (1939), that assumption of the risk that the vessel was unseaworthy or that its equipment and appliances were defective or unsafe or that its officers or crew members were negligent was not a defense. In its setting after these instructions and as part of full instructions that the plaintiff's own negligence, if any, did not bar him from recovery but, unlike domestic law, operated only to reduce the amount of his damages in proportion to the amount of negligence attributed to him, we think the instruction complained of could only be understood as bearing on the issue of the plaintiff's care, that is to say, as telling the jury that it was to decide whether the plaintiff had used due care for his own safety when he knowingly and without complaint used a gilson he knew to be worn and frayed. So construed the charge is in accordance with the rule Judge Addison Brown applied in the case of a seaman who under orders knowingly used a defectively spliced rope which broke causing him to fall, when for all that appeared a sound line would have been supplied had the seaman asked the mate for one. The Julia Fowler, 49 F. 277 (D.C.S.D.N.Y.1892), cited with approval in Socony-Vacuum Co. v. Smith, supra at 432, 59 S.Ct. 262.

We turn now to the appellant's contentions with respect to the admission of evidence.

■ During cross-examination counsel for the defendant elicited from the plaintiff that someone had come to talk to him about the accident not long after it happened and wrote down what he had said. The plaintiff said that he had not read what the man wrote down but "only glanced at it," that it was not read to him and that he refused to sign it. He said that the reason he refused to read or sign what his visitor had written down was: "Because I didn't like the things he was putting down; he wasn't

putting exactly as I was telling him," and "Every time he would ask me something and I would tell him, he would give it back to me and it was always different." Over objection counsel for the defendant cross-examined the plaintiff extensively to show variance between the plaintiff's testimony on the stand and the statements attributed to him by the writing.

Subsequently, as part of his case, counsel for the defendant put one of his employees named Cote on the stand who testified that he had interviewed the plaintiff after the accident and had written down what the plaintiff told him but not in the plaintiff's exact words. This witness was allowed without objection to read the statement to the jury, but counsel for the plaintiff objected when the court admitted the statement into evidence as an exhibit. The record is not altogether clear but it would appear that the statement was admitted in evidence as a record of the witness's, Cote's, past recollection, he having testified that while he remembered interviewing the plaintiff he had no independent recollection of what the plaintiff had said. On this ground the statement is admissible in evidence as proof of what the plaintiff had said to Cote and hence to establish the foundation for its use on cross-examination of the plaintiff as a prior contradictory statement.

The same kind of a statement, but signed, given by a crew member who testified as a witness for the plaintiff was also admitted into evidence as an exhibit over objection by counsel for the plaintiff. It appears from the record that this statement was also used on cross-examination for the purpose of impeachment as a prior inconsistent statement of the witness and that as such the court admitted it into evidence as an exhibit in the exercise of discretion. When this exhibit was admitted and later generally in the charge, the court instructed the jury that, in judging the credibility of a witness and in evaluating his testimony in court, consideration might be given to prior contradictory statements of the witness, provided it found that the witness actually had made such statements, and then, in accordance with the orthodox rule, explicitly cautioned the jury that " * * * any such prior statement is not evidence, but is to be considered by you solely for the purpose of determining whether what the witness is telling you in this courtroom is or is not the truth."

■ Aside from the use of the plaintiff's pre-trial statement as evidence of the witness Cote's past recollection, both exhibits under consideration constitute evidence that prior statements were in fact made by the plaintiff and his witness and also evidence of what they then said. Thus the statements qualified for use for the purpose of impeaching the testimony of the plaintiff and his witness and under the charge that was the only use the jury might properly make of the exhibits. There was no error in admitting the statements into evidence as exhibits for the limited use permitted by the charge.

■ The plaintiff's complaint, however, is that regardless of the charge, of which he does not complain, the statements should not have been given to the jury to take to the jury room because, having the statements before them to read, the jurors were almost certain to give the facts stated therein substantive testimonial value. They were, of course, entitled to give the plaintiff's pre-trial statement testimonial value as an admission. The rule limiting the use of prior contradictory statements only for the purpose of impeachment, so far as it exists, relates to witnesses, not to parties. We are therefore concerned only with the statement of the plaintiff's witness and as to his statement the argument serves only to point up the artificiality of the orthodox rule given to the jury in the charge that prior contradictory statements of a witness have no substantive testimonial value but can be used only to contradict the witness's testimony in court, for it is indeed probable that as practical men and women jurors would almost inevitably, regardless of instruction to the contrary, act upon the assumption that what a witness may have said

soon after an event is far more likely to be accurate than what the witness might subsequently say, even in the court under oath. See United States ex rel. Ng Kee Wong v. Corsi, 65 F.2d 564, 565 (C.A. 2, 1933). Moreover, one can hardly expect jurors, however conscientious, to perform the mental gymnastic of distinguishing sharply between using a witness's prior statement for testimonial purposes and using it only to contradict. The orthodox rule is not realistic.

Nor is the orthodox rule theoretically sound as pointed out by Dean Wigmore as long ago as 1923 in the Second Edition of his Treatise on the law of Evidence wherein, rejecting his earlier view, he wrote in Volume II, § 1018:

"(b) It does not follow, however, that Prior Self-contradictions, when admitted, are to be treated as having no affirmative testimonial value, and that any such credit is to be strictly denied them in the mind of the tribunal. The only ground for doing so would be the Hearsay rule. But the theory of the Hearsay rule is that an extrajudicial statement is rejected because it was made out of Court by an absent person not subject to cross-examination (post, § 1362). Here, however, by hypothesis the witness is present and subject to cross-examination. There is ample opportunity to test him as to the basis for his former statement. The whole purpose of the Hearsay rule has been already satisfied. Hence there is nothing to prevent the tribunal from giving such testimonial credit to the extrajudicial statement as it may seem to deserve."

In Dean Wigmore's view, now supported by Rule 63(1) of the Uniform Rules of Evidence, the statements would be admissible for their testimonial value and not merely admissible for impeachment and therefore the court's charge would be unduly favorable to the plaintiff.

A careful examination of the record shows that there was no abuse of discretion in the latitude allowed counsel for the defendant in his cross-examination of the plaintiff's witnesses.

Judgment will be entered affirming the judgment of the District Court.