Osvaldo **LUGO**, Appellant,

v.

**UNITED STATES** of America, Appellee.

No. 21162.

United States Court of Appeals
Ninth Circuit.

Jan. 9, 1967.

Rehearing Denied Feb. 13, 1967.

indictment. He was sentenced to five years on Count II, and placed on probation on Counts III and IV for five years, consecutive to Count II. The jury had also convicted appellant on Count I (conspiracy to smuggle four grams of heroin), but the trial judge set aside that verdict. Counts II and III charged appellant with aiding and abetting the codefendant, Jose de la Rosa, in smuggling and concealing two ounces of heroin (18 U.S.C. § 2; 21 U.S.C. § 174), and Count IV charged him with concealing and transporting the four grams of heroin mentioned in Count I (21 U.S.C. § 174).

Jurisdiction below rested on 18 U.S.C. § 3231, and on appeal on 28 U.S.C. § 1291.

This was a second trial. At the first, on November 16, 17 and 18, 1965, the codefendant de la Rosa asked for a severance of his case, which was granted. He then pled guilty to Count II, and testified against appellant on his first trial.

Such testimony occurred after de la Rosa had been sentenced to fifteen years in prison. The trial judge first had ascertained de la Rosa had previously stated to government officers he desired "to cooperate with the government," and had signed a statement giving details of the smuggling, and thoroughly implicating appellant. At the time de la Rosa changed his plea to guilty on Count II, the statement he had previously made to the government agencies was read to de la Rosa, and much of that which implicated appellant, de la Rosa then repudiated.

The trial judge stated he doubted de la Rosa's veracity, and sentenced de la Rosa to fifteen years. He then stated:

"Now, I've got sixty days, * * * to modify that sentence and if I don't modify it in sixty days, it sticks. That's the end of it.

"Now, if you want to testify in this case and tell the truth, I'll take it into account. If not, you've got some time to do." (R.T. p. 18.)

A new trial was granted Lugo. This new trial was urged on Lugo's behalf

Calvin W. Torrance, Alhambra, Cal., for appellant.

Edwin L. Miller, U. S. Atty., Mobley M. Milam, Chief Asst. U. S. Atty., Phillip W. Johnson, Asst. U. S. Atty., San Diego, Cal., for appellee.

Before BARNES, JERTBERG and BROWNING, Circuit Judges.

BARNES, Circuit Judge:

This is an appeal by the named appellant from his conviction on three counts (II, III and IV) of a four count

because of the "coercion" allegedly exercised against de la Rosa, as outlined above. (C.T. pp. 30–33.) The court then set aside and vacated both de la Rosa's guilty plea, and the verdict of guilty against Lugo, and set both matters down for trial. (C.T. p. 28.) Lugo asked for and received a severance of his trial, and was tried a second time before a different judge and jury, beginning February 1, 1966. On this second trial, de la Rosa was not called to testify.

Appellant raises as his principal point of alleged error, that de la Rosa was coerced at the first trial by reason of his fifteen year sentence so as to prevent his use by appellant as a witness.[1]

The record discloses that at the start of the second trial the trial judge (with the consent of counsel on both sides) heard de la Rosa on a voir dire examination, outside the hearing and presence of the jury. (R.T. pp. 84–95.)

After de la Rosa's readmission of his own guilt (R.T. p. 94, lines 6–12),[2] he again labeled as untrue both the story about Lugo he told at the border at the time of his arrest; and his testimony at the first trial. (Obviously, he had been under no coercion from the trial judge when he gave details of the transaction at the time of his border crossing.) The judge at the second trial, after hearing de la Rosa's explanation of why he had given false testimony stated: "Mr. Reese, I think this witness is totally unreliable." (Mr. Reese was counsel for the government.) He agreed with this estimate. The second trial before the jury then commenced, and neither side called de la Rosa as a witness.[3]

Appellant asserts that "the coercion of de la Rosa at the first trial prevented appellant from calling de la Rosa as a defense witness in the first or second trials." (Appellant's Opening Brief, p. 37.) This is, in our opinion, not true. It is a conclusion without any factual basis insofar as this appeal from this judgment of conviction is concerned. De la Rosa, had he attempted to exonerate Lugo on the second trial, could have been impeached by his statements made at the time of his arrest at the border; by Exhibit 2, the slip of paper bearing Lugo's name and telephone number; by the testimony of the various officers as to his telephone call and general conduct prior to and at the time of Lugo's arrest, etc., etc.

Whether Lugo's counsel wanted to call de la Rosa, and run the risk of certain impeachment, while gaining the advantage of certain testimony admittedly *favorable* to Lugo (e. g., R.T. p. 39, lines 2–9), and desired by his counsel, was a determination on trial strategy strictly up to Lugo's counsel.

Assuming de la Rosa was coerced, there was other impeaching testimony as to which he had not been coerced; counsel had asked for and obtained a new trial, and had his second chance to call de la Rosa, or not call him; he could weigh the risks against the benefits of calling him; no order had been made prohibiting his testimony at the second trial; counsel made his voluntary and fully considered choice. He was in no sense "prevented" from calling de la Rosa.

We can find no merit in this point (the second urged by appellant, but the first here considered).

Appellant's first point urged as error was the alleged insufficiency of the evidence to convict; because the testimony of government agent Miller as to the contents of a conversation heard in Spanish, given at the trial in English, should have been stricken: (a) because the witness could not remember all the precise Span-

1. Appellant's position is now contrary to his position taken on the motion for new trial. Then he contended that "if a new trial is granted, the Court should make an order that de la Rosa may not be called to testify for either side." (C.T. p. 33.)

2. De la Rosa's importation of the heroin was also stipulated to by counsel for the government and by counsel for Lugo. (R.T. p. 139.)

3. The defense rested without putting on any testimony.

ish words heard; (b) because his notes of the heard conversation were written either in Spanish or English; and had been thrown away after a report, in English, had been filed; (c) under the Jencks Act, the report filed in the English language should have been stricken because the original notes were not produced by the government.

We find no merit in this second contention. No cases are cited which support this position.

Appellant points out that in Ogden v. United States, 323 F.2d 819 (9th Cir. 1963), we held that "destruction of interview notes in accordance with normal administrative practice for normal administrative purposes unrelated to the suppression of evidence does not justify imposition of sanctions, or a new trial, where the same material is made available to defendant in a signed statement or Interview Report." (Id. at 821.)

Even were the whole trial to be in English, certain "jargon" or slang requires an interpretation. In this case, for example, there was the use of the words "kit," "fix," "score," "turkey," "stuff"—none of which were used in their ordinary English sense, but which in the cant of the narcotics trade had a particular meaning.

■ When such words are "translated," the fact that some other word is used in a report to express the actual meaning does not render the translation inadmissible. Nor does it stop questioning as to the accuracy of the translation, if the precise original language is remembered by the person testifying. No witness is required to give precisely the exact words heard by him when relating a conversation overheard. They may be preferable, but are not essential for admissibility. The substance of a conversation is recognized universally as permissible, and admissible in evidence.

There is no showing in this case that "the same material" was not made available to defendant's counsel as the witness Miller had originally heard.

Appellant relies heavily on Territory of Hawaii v. Tsutaichi Kawano, 20 Haw. 469 (1911). That case was reversed because of the court's refusal to permit counsel to raise the question of misinterpretation, and test the interpretation by other experts. No such ruling here exists.

■ Appellant urges that Miller heard only a part of the conversation, had been several hours without sleep, and "perhaps the words are out of context." All this is splendid argument to a jury, but not to an appellate court.

We find no merit in appellant's suggestion that Miller's testimony should have been stricken.

■ Appellant also urges that under the circumstances, Miller should not have been allowed to refresh his recollection from his report, made in English, citing State v. Perelli, 125 Conn. 321, 5 A.2d 705, 708, 121 A.L.R. 1357 (1939) and State v. Perelli, 128 Conn. 172, 21 A.2d 389 (1941). As we read those cases, a police lieutenant, overhearing by microphone, conversations of defendants in Italian, made in a cell some distance away, were not only translated into English, but the *names* of the persons so taking part in the conversations were also included. The writer thereof *assumed* who was saying what, and this, said the Connecticut court, was error.[4] Again, that was not this case.

Instructions on reasonable doubt are likewise urged as error, as well as alleged insufficient corroboration of defendant's admissions. We find no merit in either contention.

We affirm.

---

4. Whether it was this "assumption" or some other, is of little importance, so long as "assumptions" were included. The error was that the paper " * * * 'contained certain assumptions or versions of the witness Verelli['s testimony] rather than a mere interpretation of the statements made [in Italian] by the accused.' The net result of this proceeding was that the account of these conversations * * * was both incorrect and highly prejudicial." State v. Perelli, 5 A.2d at 708.