**UNITED STATES of America,
Plaintiff-Appellee,**

v.

**Miguel FELIX–JEREZ,
Defendant-Appellant.**

No. 81–1121.

United States Court of Appeals,
Ninth Circuit.

Argued and Submitted Aug. 10, 1981.

Decided Feb. 16, 1982.

Rehearing Denied April 19, 1982.

Bernardo Velasco, Asst. Federal Public Defender, Tucson, Ariz., argued, for defendant-appellant; Frank R. Zapata, Asst. Federal Public Defender, Tucson, Ariz., on brief.

**1298**

Jon R. Cooper, Asst. U.S. Atty., Tucson, Ariz., for plaintiff-appellee.

Before SKELTON * and KILKENNY, Senior Judges, and REINHARDT, Circuit Judge.

SKELTON, Senior Judge:

In this case the facts are not in dispute and are generally as follows. Miguel Felix-Jerez (defendant) had been convicted in another proceeding of having entered the United States illegally and was sentenced to ninety days in prison and three years probation for that offense. He was serving his sentence as an inmate of the Federal Prison Camp at Stafford, Arizona, when the events giving rise to the instant case occurred. The record shows that the defendant was arrested and indicted for escaping from the prison camp in violation of 18 U.S.C. § 751, and was convicted by a jury and given a prison sentence of four years to be served concurrently with the sentence he was then serving. This appeal in forma pauperis followed. The defendant is presently incarcerated. Because of the error of the court in admitting a hearsay statement into evidence over the timely objection of defendant, we reverse.

The prison camp at Stafford is a minimum security prison with no fences or enclosures and no armed guards. The prisoners are free to walk about the premises of the prison. While it was against the rules of the prison for the prisoners to leave the prison grounds without permission, the testimony of prison guards at the trial revealed that it was common knowledge at the prison that prisoners frequently went to a restaurant and bar about one-half mile from the camp to buy cigarettes, food and alcoholic beverages without obtaining permission to do so.

On November 5, 1980, during a 10:00 P.M. head count at the camp it was discovered that the defendant was not present, al-though he had not obtained permission to leave the prison grounds. He was discovered the next day walking along a road about 10 miles from the camp by an off-duty prison guard. The guard notified the local sheriff who arrested the defendant and returned him to the prison. At the time of his arrest, the defendant had two bottles of wine in his possession, one of which was unopened and the other was partly filled. He made no statement at the time he was picked up.

The next day, November 7th, the defendant was interrogated by Deputy United States Marshal Larry Hardeman at the prison. Because the defendant did not speak English and Hardeman did not speak Spanish, a camp guard named Daniel Tolavera served as an interpreter. The defendant was advised in Spanish of his *Miranda* rights and he waived them by signing a written form printed in Spanish.

The interrogation was conducted by Hardeman's asking questions in English which were translated into Spanish by Tolavera. The defendant answered the questions in Spanish and Tolavera translated the answers into English. Hardeman made notes of the questions and translated answers. Sometime later, after the interview had been concluded, Hardeman typed a statement containing the questions and translated answers as shown by his notes. As far as the record shows, the defendant was not present when the statement was typed by Hardeman, it was not read to him in Spanish, he did not sign it, and obviously did not know of its existence until the day of the trial.

At the trial, Tolavera was called as a witness. He testified that he acted as an interpreter at the interview between Hardeman and defendant in the manner described above because he spoke both Spanish and English, but that he had no independent recollection of the questions and answers and could not testify what they were. He said that his translations

* The Honorable Byron G. Skelton, Senior Judge of the United States Court of Claims, sitting by designation.

were accurate and that he had no difficulty in understanding the defendant's Spanish. He made no notes of the questions and answers.

The prosecutor then called Hardeman as a witness. He testified that he conducted the interrogation of the defendant as a United States Marshal with the assistance of camp guard Tolavera as an interpreter in the manner aforesaid. He said he did not know Spanish and did not know what the answers were that the defendant gave to Tolavera in Spanish, nor whether Tolavera correctly translated them into English. He testified further that he made notes of the questions and translated answers and later typed them himself in the form of a statement. He then compared the statement with his original notes and said that the statement was a true and accurate record and transcript of his original notes of the conversation with defendant. The prosecutor then offered the statement as evidence without asking Hardeman if he had an independent recollection of the questions he asked the defendant and of the answers the defendant gave, nor whether he could testify from his recollection what the questions and answers were. The defense counsel objected to the introduction of the statement on the ground that it was hearsay. The court overruled the objection and admitted the statement into evidence without giving any reason for his ruling. The statement was then read to the jury.

The questions and answers in the statement Hardeman had typed and which was read to the jury showed that the defendant had planned from the beginning of his incarceration at the Stafford prison camp to escape, and that he did escape on November 5, 1980, and that after drinking two six-packs of beer he bought at the nearby bar, he decided to remain away, and that he had no intention of returning to the camp.

After a careful review of the entire record and consideration of the briefs, argument of counsel and applicable authorities, we conclude that the Hardeman statement that was read to the jury was hearsay and inadmissible as evidence under Rule 802 of the Federal Rules of Evidence, unless it met the requirements of one of the 24 excep-

tions to the hearsay rule which are set forth in Rule 803(1)–(24).

■ Before turning to those exceptions, we address a preliminary issue: whether the document constitutes an admission under Federal Rules of Evidence 801(d)(2) and is therefore outside the scope of the hearsay rule. The rule provides:

(d) *Statements which are not hearsay.* A statement is not hearsay if—

\*     \*     \*     \*     \*     \*

(2) *Admission by party-opponent.* The statement is offered against a party and is

(A) his own statement, . . .

Since the defendant never read or signed the document, which was prepared by an adverse witness, the question is whether it could be his "own statement" within the meaning of Rule 801(d)(2)(A).

■ This question does not arise when a statement signed by the defendant is offered because the signature operates as sufficient proof that the defendant made the statement.

Without a signature, the issue is whether by some other conduct a defendant may be deemed to have adopted the statement. *Wong Sun v. United States,* 371 U.S. 471, 491, 83 S.Ct. 407, 419, 9 L.Ed.2d 441 (1963); *see generally,* 7 Wigmore, Evidence § 2134 (Chadbourn rev. 1978).

■ Although the district court did not treat this question, no arrangement of the facts in the record constitutes an act of adoption. The defendant never read, saw or signed the statement. In fact, he did not know of its existence until the beginning of his trial. He did not testify at that trial. Because the burden of showing admissibility rests on the prosecution, *Brown v. Illinois,* 422 U.S. 590, 604, 95 S.Ct. 2254, 2262, 45 L.Ed.2d 416 (1975), we conclude that the statement is not admissible under Rule 801(d)(2)(A).

A contrary result would produce dangers unacceptable in the context of criminal prosecutions. For obvious reasons, an admission of criminal conduct is a potent piece

of evidence. The factfinder's interpretation of it is critical. When an admission of criminal conduct is offered in the form of a document, it takes on even greater weight. The factfinder is far more likely to rely on its accuracy. Yet, when such documents are transcribed by non-professional personnel, the danger of paraphrase is high, as any notetaker knows. In addition, a notetaker may misunderstand particular answers or statements and make an incorrect note, or the note may be correct, but in reducing it to "transcript", he may impose a different tone or emphasis on a statement. Where, as here, the charge includes an intent element, that misplaced emphasis may be decisive.[1]

Rule 803 provides:

Rule 803. Hearsay Exceptions; Availability of Declarant Immaterial

The following are not excluded by the hearsay rule, even though the declarant is available as a witness:

Then follows the 24 exceptions that are listed numerically in separate sub-paragraphs. We have carefully examined each of these exceptions in connection with the facts in this case and have concluded that none of them are applicable so as to make the Hardeman statement admissible as a non-hearsay document, except *arguendo* sub-paragraph (5) which provides:

(5) Recorded recollection. A memorandum or record concerning a matter about which a witness once had knowledge but now has insufficient recollection to enable him to testify fully and accurately, shown to have been made or adopted by the witness when the matter was fresh in his memory and to reflect that knowledge correctly. If admitted, the memorandum or record may be read into evidence but may not itself be received as an exhibit unless offered by an adverse party.

The notes of the Advisory Committee found at the end of Rule 803 contain the following statement, in pertinent part, regarding this exception:

The principal controversy attending the exception has centered, not upon the propriety of the exception itself, but upon the question whether a preliminary requirement of impaired memory on the part of the witness should be imposed. The authorities are divided.

\*   \*   \*   \*   \*   \*

Nevertheless, the absence of the requirement, it is believed, would encourage the use of statements carefully prepared for purposes of litigation under the supervision of attorneys, investigators, or claim adjusters. Hence the example includes a requirement that the witness not have "sufficient recollection to enable him to testify fully and accurately." To the same effect are California Evidence Code § 1237 and New Jersey Rule 63(1)(b), *and this has been the position of the federal courts. Vicksburg & Meridian R. R. v. O'Brien*, 119 U.S. 99, 7 S.Ct. 118, 30 L.Ed. 299 (1886); *Ahern v. Webb*, 268 F.2d 45 (10th Cir. 1959); and see *N.L.R.B. v. Hudson Pulp and Paper Corp.*, 273 F.2d 660, 665 (5th Cir. 1960); *N.L.R.B. v. Federal Dairy Co.*, 297 F.2d 487 (1st Cir. 1962). But cf. *United States v. Adams*, 385 F.2d 548 (2nd Cir. 1967). (Emphasis supplied). Title 28 U.S.C.A. Rule 803 at p. 586.

◼ This circuit follows the rule set forth above that before a prior hearsay statement of a witness who is testifying can be admitted into evidence under this exception, it must first be shown that the witness does not now have sufficient recollection as to the matters contained in the statement to enable him to testify fully and accurately regarding them. See *United States v. Edwards*, 539 F.2d 689 (9 Cir.), *cert. denied*, 429 U.S. 984, 97 S.Ct. 501, 50 L.Ed.2d 594 (1976), where we held:

---

1. Each of these problems is compounded by the fact that here defendant's statements were first translated from Spanish into English by a camp guard. The guard was not appointed by a court as an interpreter and, consequently, had no official standing to act in that capacity. He was not named nor appointed by the defendant to act as his agent. There was an obvious conflict of interest between them. Under these facts, the agency-language-conduit theory advocated by the government is inapplicable in this case, and it cannot be used to make Marshal Hardeman's hearsay statement that of the defendant.

Appellant also claims the trial court erred in admitting evidence of Newman's signed statement describing the events leading to the crime. At trial Newman denied any present recollection of the facts in question and the written statement was offered and admitted under the recorded recollection exception to the hearsay rule. F.R.Evid. 803(5).

Documents admitted pursuant to this rule must meet three requisites: (1) The document must pertain to matters about which the witness once had knowledge; (2) The witness must now have an insufficient recollection as to such matters; (3) The document must be shown to have been made by the witness and reflect his knowledge when the matters were fresh in his memory. 539 F.2d at 691–692.

■ It is clear that the second requirement set forth above in *Edwards* was not complied with in this case. Witness Hardeman did not testify that he now had an insufficient recollection as to the matters contained in the statement so as to be able to testify regarding them. In fact, he was not even asked if he now had an insufficient recollection as to such matters. The proper predicate was not laid for the introduction of the statement. Hardeman was on the witness stand and, as far as the record shows, he could have testified about the facts contained in the statement. Under these circumstances there was no need to introduce the statement, and it was error to do so.

Long before Rule 803(5) was adopted the Supreme Court set forth the substance of the rule in the case of *Vicksburg & Meridian R. R. Co. v. O'Brien*, 119 U.S. 99, 7 S.Ct. 118, 30 L.Ed. 299 (1886). In that case, a physician was testifying as to the injuries to the plaintiff's wife in a railroad accident. The plaintiff offered a prior statement of the physician which he had made at the time of the accident regarding the wife's injuries. The court allowed the statement to be read to the jury over the hearsay objection of the defendant. There was no prior showing that the physician had no recollection of the facts so as to be able to testify regarding the facts in the statement. The Supreme Court held that it was error to read the hearsay statement to the jury under these circumstances, saying:

We are of the opinion that this ruling cannot be sustained, upon any principle recognized in the law of evidence. The authorities are uniform in holding that a witness is at liberty to examine a memorandum prepared by him under the circumstances in which this one was, for the purpose of refreshing or assisting his recollection as to the facts stated in it.

\*   \*   \*   \*   \*   \*

There are, however, other cases, to the effect that where the witness states, under oath, that the memorandum was made by him presently after the transaction to which it relates, for the purpose of perpetuating his recollection of the facts, and that he knows it was correct when prepared, although after reading it he cannot recall the circumstances so as to state them alone from memory, the paper may be received as the best evidence of which the case admits.

The present case does not require us to enter upon an examination of the numerous authorities upon this general subject; for, it does not appear here but that at the time the witness testified he had, without even looking at his written statement, a clear, distinct recollection of every essential fact stated in it. If he had such present recollection, there was no necessity whatever for reading that paper to the jury. Applying, then, to the case the most liberal rule announced in any of the authorities, the ruling by which the plaintiffs were allowed to read the physician's written statement to the jury as evidence, in itself, of the facts therein recited, was erroneous. 119 U.S. at 102, 7 S.Ct. at 120, 30 L.Ed. at 300.

*See also United States v. Riccardi*, 174 F.2d 883 (3 Cir.), *cert. denied*, 337 U.S. 941, 69 S.Ct. 1519, 93 L.Ed. 1746 (1949); *Asaro v. Parisi*, 297 F.2d 859 (1 Cir.), *cert. denied*, 370 U.S. 904, 82 S.Ct. 1250, 8 L.Ed.2d 400 (1962); *Ahern v. Webb*, 268 F.2d 45 (10 Cir. 1959); *J. C. Penny Co. v. N.L.R.B.*, 384 F.2d 479 (10 Cir. 1967); *N.L.R.B. v. Hudson Pulp & Paper Corp.*, 273 F.2d 660 (5 Cir. 1960);

*United States v. Senak,* 527 F.2d 129 (7 Cir. 1975), *cert. denied,* 425 U.S. 907, 96 S.Ct. 1500, 47 L.Ed.2d 758 (1976); *Jones On Evidence,* Vol. 4, 1972, Sections 27:9 and 27:11, at 267 and 271; 32 C.J.S., *Evidence,* Section 696 at pp. 946–948; and *United States v. Judon,* 567 F.2d 1289 (5 Cir. 1978).

The decision in the *Judon* case, *supra,* contains a good discussion of Rule 803(5) and the reasoning therein is particularly applicable to our case. There a witness was present when a savings and loan branch was robbed. He wrote down on a piece of paper a description of the robber's car and its license number. The witness testified at the trial and his memorandum aforesaid was introduced into evidence over a hearsay objection and a further objection that a proper predicate had not been laid for its admission. The court held this was error, saying:

> The admissibility of this document is governed by Fed.R.Evid. 803(5), which prescribes the conditions under which recorded recollection qualifies as an exception to the hearsay rule:
>
> [The Rule is quoted]
>
> It is clear from the second sentence of this rule that the admission of this memorandum as an exhibit was error. The drafters precluded the receipt of recorded recollection as an exhibit of the proponent of the memorandum in order to prevent the trier of fact from being overly impressed by the writing. 11 J. Moore, Federal Practice § 803(5)[5] (1976).
>
> *This memorandum may have qualified as a hearsay exception; however, the record reveals no proper predicate had been laid to show its admissibility as such. In particular, there was no showing that the witness had insufficient recollection to enable him to testify fully and accurately at trial.* The Advisory Committee deemed this requirement desirable, since its absence "would encourage the use of statements carefully prepared for purposes of litigation under the supervision of attorneys, investigators, or claim adjusters." *See* 11 J. Moore, Federal Practice § 803(5)[4] (1976). Additionally, we note that there was no specific testimony that the recording reflected the witness'

knowledge correctly when the matter was fresh in his memory.

> This failure to adhere to the requirements of the Federal Rules of Evidence compounds the error in admitting the documents in evidence. (Emphasis supplied). 567 F.2d at 1294.

As stated in the notes of the Advisory Committee, and as repeated and approved by the court in the *Judon* case, the absence of a showing that the witness had insufficient recollection to enable him to testify fully and accurately at the trial, "would encourage the use of statements carefully prepared for purposes of litigation under the supervision of attorneys, investigators, or claim adjusters." That is exactly what happened in the instant case. Marshal Hardeman was an investigator. He prepared the statement for the express purpose of using it to prosecute the defendant. This is a classic example of the vice the Advisory Committee sought to prohibit by requiring proof of insufficient recollection by a witness before his hearsay statement can be admitted into evidence.

■ We conclude that the admission of Hardeman's statement into evidence without the proper predicate having been laid did not meet the requirements of Rule 803(5). We next consider whether the error was harmless.

The government was required to prove beyond a reasonable doubt that the defendant was outside the premises of the prison camp with the intent never to return, before he could be convicted of escaping from the prison. Thus, "intent" not to return was the principal element that the government was required to prove. The facts show that except for Hardeman's hearsay statement, there was no evidence that the defendant did not intend to return to the prison. When the off-duty guard discovered the defendant he was about 10 miles from the prison and was walking along the road away from the direction of the prison. At that time, the defendant had two bottles of wine in his possession, one of which had been partially consumed. Also, since leaving the prison the day before, the defendant

had drunk twelve bottles (or cans) of beer (two six-packs). No alcoholic tests were given to him to determine whether or not he was intoxicated when he was encountered by the guard or when he was picked up by the sheriff, although the guard testified that he did not appear to be drunk. At the time he was picked up, the defendant made no statement. There is nothing in these facts that proved beyond a reasonable doubt that the defendant had an intent never to return to the prison.

The charge of the court is significant on the issue of intent. For instance, the charge stated, in pertinent part:

> Escape is the voluntary departure from custody with the intention of avoiding confinement.

> A person may not escape through inadvertence. For example, a prisoner—if a prisoner goes out on a work detail, falls asleep under a tree and is accidentally left behind, he has not voluntarily escaped within the meaning of the law.

> \* \* \* \* \* \*

The crime charged in this case is a serious crime which requires proof of specific intent before the defendant can be convicted. Specific intent as the term implies means more than the general intent to commit the act.

On the question of intoxication as related to intent, the court charged the jury, in pertinent part:

> Although intoxication or drunkenness alone will never provide a legal excuse for the commission of a crime, the fact that a person may have been intoxicated at the time of the commission of a crime may negate the the existence of a specific intent. So evidence that a defendant acted or failed to act while in a state of intoxication is to be considered in determining whether or not the defendant acted or failed to act with specific intent as charged.

> If the evidence in the case leaves the jury with a reasonable doubt whether because of the degree of his intoxication in the mind of the accused was capable of forming or did form specific intent to commit the crime charged, the jury should acquit the accused.

Considering the amount of alcohol that the defendant had consumed, it is logical to assume that at the time he was picked up he was under the influence of alcohol to some extent, although the record does not show how much. The point we wish to make is that the absence of defendant from the prison overnight, whether due to intoxication, inadvertence, or because he was "feeling pretty good," as the record shows, there is no evidence outside of Hardeman's hearsay statement that shows beyond a reasonable doubt that the defendant had the specific intent not to return to the prison.

This brings us to Hardeman's hearsay statement which contained a number of conclusionary and inculpatory questions and remarks. For instance, one of the questions in the statement that was alleged to have been asked of the defendant was "When did you escape?" Another question was "What time did you escape?" These questions assume the commission of the offense and are like the well known cliche question of "When did you stop beating your wife?"

The Hardeman statement says that the defendant admitted that he had planned to escape and that he did not intend to return to the prison. We conclude that the statement was highly prejudicial to the defendant and could have, and probably did, cause the jury to convict him. The holding of the Supreme Court in *Vicksburg & Meridian R. R. Co. v. O'Brien, supra*, is very much in point, as follows:

> It is, however, claimed, in behalf of the plaintiffs, that in his answers to other interrogatories the physician testified, apart from the certificate, to the material facts embodied in it, and that therefore the reading of it to the jury, could not have prejudiced the rights of the defendant, and, for that reason should not be a ground of reversal.

> We are unable to say that the defendant was not injuriously affected by the reading of the physician's certificate in evidence. It is not easy to determine what weight was given to it by the jury.

In estimating the damages to be awarded in view of the extent and character of the injuries received, the jury, for aught that the court can know may have been largely controlled by its statements. The practice of admitting the unsworn statements of witnesses, prepared in advance of trial, at the request of one party and without the knowledge of the other party, should not be encouraged by further departures from the established rules of evidence.

While this court will not disturb a judgment for an error that did not operate to the substantial injury of the party against whom it was committed, it is well settled that a reversal will be directed unless it appears, beyond doubt, that the error complained of did not and could not have prejudiced the rights of the party. *Smith v. Shoemaker*, 17 Wall. 630, 639 [84 U.S. bk. 21 L.Ed. 717, 719]; *Deery v. Cray*, 5 Wall. 795 [72 U.S. bk. 18 L.Ed. 653]; *Moores v. Nat. Bank*, 104 U.S. 625, 630 [14 Otto 625, Bk. 26 L.Ed. 872]; *Gilmer v. Higley*, 110 U.S. 47, 50 [Bk. 28 L.Ed. 62]. 119 U.S. at 103, 7 S.Ct. at 120, 30 L.Ed. at 300.

The admission of the Hardeman statement falls short of meeting the "harmless error" test set forth in *Kotteakos v. United States*, 328 U.S. 750, 765, 66 S.Ct. 1239, 1248, 90 L.Ed. 1557 (1946), which allows affirmance only when we find "fair assurance" that the verdict "was not substantially swayed by the error" and that "substantial rights were not affected." Since the Hardeman statement was the only evidence presented on the intent element, no such "fair assurance" is possible.

Accordingly, we hold that the admission of the statement into evidence was not harmless error and that the ruling cannot be sustained. The judgment of the district court is reversed and the case is remanded for a new trial.

REVERSED and REMANDED.

KILKENNY, Senior Circuit Judge, dissenting:

Because I feel that the majority's construction of FRE 801(d)(2) as applied to the admitted facts in this case is completely wrong, I am obliged to file this dissent. The statements read into evidence by Hardeman were not hearsay, and, therefore, were properly admitted:

I.

The Rule under consideration provides, among other things:

"*RULE 801. Definitions*

The following definitions apply under this article:

(a) *Statement.* A "statement" is (1) an oral or written assertion or (2) nonverbal conduct of a person, if it is intended by him as an assertion.

\* \* \* \* \* \*

(d) *Statements which are not hearsay.* A statement is not hearsay if—

\* \* \* \* \* \*

(2) *Admission by party-opponent.* The statement is offered against a party and is (A) his own statement, in either his individual or a representative capacity ... (D) a statement by his agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship, ...."

The majority emphasizes that since the appellant never read or signed the document prepared by the adverse witness Hardeman, the statements contained therein could not be the appellant's "own statement" within the meaning of FRE 801(d)(2)(A). Consequently, the majority concludes that the statements were hearsay and should not have been admitted into evidence. This approach completely ignores the fact that the appellant has never questioned the voluntariness of the interview or the accuracy of the translation. Deputy Hardeman swore that the statements read from the document accurately reflected the statements of the appellant as translated by Officer Tolavera. Tolavera testified that he had no trouble understanding the appellant's Spanish, and that he translated truly and accurately. Appellant does not question the integrity of either Hardeman or

Tolavera. In addition, there is nothing in the record that suggests that the statements read into evidence were anything other than an accurate translation of the admissions of the appellant.

Despite these facts, the majority has concluded that these admissions could not be the appellant's "own statement" for purposes of FRE 801(d)(2)(A). If its rationale is taken to its logical conclusion, a non-English speaking defendant's confession, regardless of its accuracy or voluntariness, could never be admitted into evidence unless he subsequently signs or adopts the statement once it is reduced to writing in English. But, would the defendant understand the English writing any better than he would understand the oral translation of an interpreter? The obvious answer is no. The majority states that "A contrary result would produce dangers unacceptable in the context of criminal prosecutions." And yet, the record in this case does not disclose even the hint of any abuse. The appellant clearly trusted Tolavera or he would not have consented to his use as an interpreter. And again, I must emphasize that the appellant does not challenge the integrity of Hardeman or Tolavera, the voluntariness of the interview, or the accuracy of the translation. In light of this, the majority's conclusion is an affront to both common sense and the interests of justice.

The only authority cited in support of the majority's theory is *Wong Sun v. United States*, 371 U.S. 471, 491, 83 S.Ct. 407, 419, 9 L.Ed.2d 441 (1963), and 7 Wigmore Evidence 2134 (Chadbourn Rev. 1978). Neither authority gives support to this theory. In *Wong Sun*, the Supreme Court stated:

"The fact that the statement was unsigned, whatever bearing this may have upon its weight and credibility, does not render it inadmissible; Wong Sun understood and adopted its substance, though he could not comprehend the English words. The petitioner has never suggested any impropriety in the interrogation itself which would require the exclusion of this statement." 371 U.S. at 491, 83 S.Ct. at 419.

In *Wong Sun*, the defendant knew that he was making a confession even though he could not understand the English words. Here, the appellant clearly knew that he was making a statement concerning his unexcused absence from the prison. By his consent to the interview and his failure to question the accuracy of the translation, the appellant can be said to have adopted the substance of Hardeman's statement, even though "he could not comprehend the English words" as in *Wong Sun*. As stated in *Wong Sun*, the translation and the transcription of Hardeman's notes should go to the weight of the evidence, and not to its admissibility. *See also, United States v. Tijerina*, 412 F.2d 661, 664 (CA10 1969), *cert. denied* 396 U.S. 990, 90 S.Ct. 478, 24 L.Ed.2d 452; *Lugo v. United States*, 370 F.2d 992, 995 (CA9 1967), *cert. denied* 388 U.S. 916, 87 S.Ct. 2130, 18 L.Ed.2d 1357. As to the Wigmore citation, this is nothing more than a statement of general law having no application to the facts before us.

Absent a showing of abuse, and assuming the accuracy of the translation and the voluntariness of the interview, there is no reason why the language of an interpreter should not be considered the statement of a defendant. The interpreter is merely serving as a language conduit. *United States v. Ushakow*, 474 F.2d 1244, 1245 (CA9 1973); *United States v. Tijerina, supra*.

In addition, I urge that even if the admission is not considered the appellant's "own statement" under FRE 801(d)(2)(A), it was still a statement of appellant's agent under FRE 801(d)(2)(D). Since the appellant voluntarily consented to the use of the interpreter, Tolavera became his agent for the purpose of communicating with Hardeman. *See, e.g. United States v. Santana*, 503 F.2d 710, 717 (CA2 1974), *cert. denied* 419 U.S. 1053, 95 S.Ct. 632, 42 L.Ed.2d 649. Beyond question, the English translation of appellant's admissions were statements by appellant's "agent or servant concerning a matter within the scope of his agency or employment, made during the existence of the relationship."

## II.

In view of my conclusion that appellant's statement cannot be considered as hearsay under FRE 801(d)(2)(A) or FRE 801(d)(2)(D), there is no need to comment on the majority's various arguments and citations with reference to *exceptions* to the hearsay rule. Obviously, the exceptions have no application to a factual portrait where the hearsay rule is not involved.

## III.

Appellant is in no position to challenge the form of the statement which was received in evidence for the reason that his only objection to its introduction was that it constituted hearsay. Here, I turn to the rule which precludes him from raising other possible objections to the statement's introduction at this stage of the proceedings. It is fundamental that the failure of a litigant to make a timely objection to alleged errors (regardless of subject matter other than jurisdiction) waives those objections for purposes of appeal unless the error is so fundamental as to result in a miscarriage of justice. *In re Southland Supply, Inc.*, 657 F.2d 1076, 1079 (CA9 1981); *Ahmad v. American S.S. Mutual Protection & Indemn. Ass'n*, 640 F.2d 993, 996 (CA9 1981); *Friedman & Jobusch, Architects & Engineers v. C.I.R.*, 627 F.2d 175, 177 (CA9 1980); *Adams v. United States*, 318 F.2d 861, 865 (CA9 1963). If other objections had been made, the statement could have been used to refresh the recollection of the officer and essentially the same testimony would have been received. Here there was no miscarriage of justice.

For that matter this universal statement of law is codified in the Federal Rules of Evidence § 103 from which I quote:

"Rule FRE 103

(a) *Effect of erroneous ruling.* Error may *not* be predicated upon a ruling which admits or excludes evidence unless a substantial right of the party is .affected, *and* (1) *Objection.* In case the ruling is one admitting evidence, a timely objection or motion to strike appears of record, *stating the specific ground of objection*, if the specific

ground was not apparent from the context; ..." [Emphasis supplied] Clearly, appellant is bound by his sole objection.

## CONCLUSION

Accordingly, under either the "language conduit" or the "agency" approach, the statements read into evidence were not hearsay and were properly admitted. To hold otherwise makes a mockery of common sense, the Federal Rules of Evidence, and the common law. I would affirm the conviction.