8 F.3d 31
 NOTICE: Ninth Circuit Rule 36-3 provides that dispositions other than opinions or orders designated for publication are not precedential and should not be cited except when relevant under the doctrines of law of the case, res judicata, or collateral estoppel.
UNITED STATES of America, Plaintiff-Appellee,
v.
Esterbel GONZALES-NUNEZ, Defendant-Appellant.
 No. 92-10475.
 United States Court of Appeals, Ninth Circuit.
 Argued and Submitted May 14, 1993.
Decided Oct. 6, 1993.
 
 1
 Before: POOLE and FERNANDEZ, Circuit Judges, and KELLEHER,* District Judge.
 
 
 2
 MEMORANDUM**
 
 
 3
 Appellant Esterbel Gonzales-Nunez was convicted of conspiracy to possess with intent to distribute and to distribute cocaine and distribution of cocaine in violation of 21 U.S.C. § 841(a)(1) and 21 U.S.C. § 846. We affirm.
 
 FACTS
 
 4
 Appellant's arrest culminated an undercover investigation conducted by Special Agent Michael Levin of the FBI. On July 19, 1991, Levin was introduced to Jorge R. Gonzales-Arestegui by a co-operating witness. On that occasion Levin purchased one ounce of cocaine from Arestegui in the parking lot of a fast food restaurant. After the transaction Arestegui was observed leaving the scene in a car driven by Appellant.
 
 
 5
 On August 13, 1991, Levin purchased two more ounces of cocaine from Arestegui. On October 23, 1991, Arestegui and Levin met again. At SA Levin's request, Arestegui agreed to sell him one-half kilogram the following Monday, October 28, 1991.
 
 
 6
 On October 28, 1991, Levin and Arestegui met at the parking lot of a 7-11. Arestegui told Levin that he was waiting for his associate. After a short time, Appellant appeared in his automobile. Arestegui went to Appellant's car and returned with one-half kilogram of cocaine. The two were then arrested without incident.
 
 DISCUSSION
 I. Denial of Severance or Mistrial
 
 7
 Appellant and Arestegui were tried jointly. Arestegui elected to testify and, during the government's cross-examination, admitted that Appellant had supplied him with the cocaine.[1] Appellant claims that the district court should have granted either severance or mistrial because the two defendants had mutually inconsistent defenses. Next, Appellant claims that he was placed in a position in which Arestegui's counsel would likely have commented on his failure to testify if he chose not to take the stand. In addition, Appellant suggests that Arestegui's testimony itself constituted a commentary on Appellant's prospective decision not to testify.
 
 A. Mutually Inconsistent Defenses
 
 8
 The mere fact that one defendant implicates another does not entitle the defendants to separate trials. United States v. Sherlock, 962 F.2d 1349, 1369 (9th Cir.1989), cert. denied, 113 S.Ct. 419 (1992); United States v. Ramirez, 710 F.2d 535, 546 (9th Cir.1983). In order to obtain severance on grounds of mutually inconsistent defenses, a defendant must demonstrate that "the acceptance of one party's defense will preclude the acquittal of the other party." Ramirez, 710 F.2d at 546. "The defendant must show that '[t]he essence or core of the defenses must be in conflict such that the jury, in order to believe the core of one defense, must necessarily disbelieve the core of the other." Sherlock, 962 F.2d at 1363 ( quoting United States v. Romanello, 726 F.2d 173, 177 (5th Cir.1984)).
 
 
 9
 In this case, Arestegui admitted to having participated in the drug transaction but claimed that he had been entrapped by Levin. Appellant's defense was that the government had not sustained its burden of proof. These defenses are not so inconsistent that acceptance of one requires rejection of the other. It was not necessary to Arestegui's defense for the jury to conclude that he acted in concert with Appellant. His defense would have been equally valid if he had received from the cocaine from someone else.
 
 
 10
 The fact that Arestegui implicated Appellant does not compel the conclusion that the defenses were irreconcilable. As this Court has noted "[t]he primary danger" sought to be avoided by the rule requiring severance where defenses are mutually inconsistent "is a defendant faced with two prosecutors--the government and his codefendant." Sherlock, 926 F.2d at 1363.
 
 
 11
 Such was plainly not the case here. Arestegui made no reference to Appellant in his direct testimony; it was only on cross-exam that he identified Appellant as the one who supplied him with the cocaine. Indeed, Appellant's role in the affair played no part in Arestegui's defense.
 
 
 12
 B. Potential Commentary on Failure to Testify
 
 
 13
 Appellant argues that Arestegui's decision to testify opened the door for Arestegui's counsel, during closing arguments, to raise the issue of Appellant's failure to take the stand. Thus, Appellant claims that he was forced to take the stand in violation of his Fifth Amendment rights.
 
 
 14
 We find this contention meritless. Arestegui's counsel would not have been permitted to comment on Appellant's silence. United States v. De La Cruz Bellinger, 422 F.2d 723, 726-727 (9th Cir.), cert. denied, 398 U.S. 942 (1970).
 
 C. Arestegui's Comment
 
 15
 Under cross-examination, Arestegui was asked whether Appellant had supplied him with cocaine. He replied "Ask him."[2] Appellant argues that this remark constituted an impermissible comment on Appellant's silence which compelled him to take the stand.
 
 
 16
 We disagree. It has not been established that "an uninvited, unanticipated statement" by a witness can be equated with the commentary of a prosecutor on a defendant's failure to testify. United States v. Lewis, 787 F.2d 1318, 1324-1325 (9th Cir.1986). Even assuming that Arestegui's response is to be judged as though it came from a prosecutor, the remark did not violate Appellant's rights.
 
 
 17
 The test for judging the propriety of such a comment "is whether the language used was of such a character that the jury would naturally and necessarily take it to be a comment on the failure to testify." People of the Territory of Guam v. Ojeda, 758 F.2d 403, 406 (9th Cir.1985). Arestegui's remark, taken in context, was not a comment on Appellant's failure to testify. It was more likely an attempt at evasion by a witness who felt uncomfortable at being asked to implicate a co-conspirator.
 
 II. Admission of Post-Arrest Statements
 
 18
 After his arrest, Appellant made incriminating statements in Spanish to Levin. Appellant contends that the district court erred in admitting these statements on grounds that he had not knowingly and intelligently waived his rights under Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1602). In the alternative Appellant argues that the statements should have been excluded as the inadmissible hearsay statements of an interpreter.
 
 A. Effectiveness of Waiver
 
 19
 In determining whether a suspect has waived his Miranda rights a court must consider "the totality of the circumstances surrounding the interrogation." Moran v. Burbine, 475 U.S. 412, 421, 106 S.Ct. 1135, 1141, 89 L.Ed.2d 410 ( quoting Fare v. Michael C., 442 U.S. 707, 725, 99 S.Ct. 2560, 2571, 61 L.Ed.2d 197 (1979)). Relevant factors "includ[e] the background, experience and conduct of the accused." North Carolina v. Butler, 441 U.S. 369, 374, 99 S.Ct. 1755, 1758 (1979) ( quoting Johnson v. Zerbst, 304 U.S. 458, 464, 58 S.Ct. 1019, 1023 L.Ed. 1461 (1938)).
 
 
 20
 The evidence supported the district court's conclusion that Appellant understood his waiver of rights. Before signing the waiver, which is printed in Spanish, Appellant read it out loud.[3] In response to a question from Levin, Appellant stated that he understood the form. At the suppression hearing, Appellant testified that he took the form to mean that he had a right to talk to a lawyer.
 
 
 21
 Appellant points to two pieces of evidence to support his claim that he could not understand the waiver of rights. First, at the suppression hearing Appellant testified that he did not understand what the form meant. As Magistrate Judge Leavitt noted, however, Appellant's credibility in making this self-serving statement was "seriously in doubt." Next, Appellant offered the testimony of Corina Mathieu-Higginbotham, professor of Spanish at UNLV. Professor Mathieu-Higginbotham testified that, in her expert opinion, Appellant's sixth grade rural Mexican education did not equip him to understand the written Spanish contained in the waiver of rights form. In light of the evidence that Appellant understood the form it was not clear error for the district court to reject Professor Mathieu-Higginbotham's conclusion.
 
 
 22
 Appellant's contention that his waiver was involuntary is similarly unpersuasive. Appellant claims that as a result of his exposure to Mexican federales, he is intimidated by authority figures. Even if true, this fact alone would not nullify Appellant's waiver. The voluntariness of a waiver of Miranda rights "has always depended on the absence of police overreaching, not on 'free choice' in any broader sense of the word." Colorado v. Connelly, 479 U.S. 157, 170, 107 S.Ct. 515, 523, 93 L.Ed.2d 473. There is no indication that SA Levin or any other government agent engaged acted improperly in securing Appellant's waiver of rights.
 
 B. Hearsay
 
 23
 After Appellant signed the waiver of rights form, Levin questioned him. The interview was conducted entirely in Spanish. Levin did not record the interview, nor did a reporter transcribe it. No interpreter was present. At trial, Levin testified in English to what Appellant told him.
 
 
 24
 Appellant cites United States v. Nazemian, 948 F.2d 522 (9th Cir.1991) cert. denied, 113 S.Ct. 107 (1992), and United States v. Felix-Jerez, 667 F.2d 1297 (9th Cir.1982), for the proposition that the out of court statements of an interpreter may be inadmissible hearsay.
 
 
 25
 Those cases have no applicability here. This is not a situation in which the government introduces a translator's out of court statements as those of the defendant. Instead, Levin testified directly to what Appellant told him. Appellant's statements to Levin are not hearsay. Fed.R.Evid. 801(d)(2)(a).
 
 III. Sufficiency of the Evidence
 
 26
 Appellant next argues that the evidence at trial was insufficient to sustain his convictions. In passing on a challenge to the sufficiency of the evidence "this court examines the evidence in the light most favorable to the government in order to determine whether any rational trier of fact could find the defendant guilty beyond a reasonable doubt." United States v. Brannan, 898 F.2d 107, 109 (9th Cir.), cert. denied, 498 U.S. 833 (1990).
 
 
 27
 The evidence the government presented amply supported Appellant's convictions. Levin testified to the following: He and Arestegui had arranged a drug buy. At the designated sight, Arestegui informed him that they had to wait for his associate. Moments later, Appellant arrived. Arestegui walked over to Appellant's car and returned with a package represented to be one-half kilogram of cocaine. After Appellant's arrest, Appellant told SA Levin that he had received the cocaine from an individual at a bar and had delivered it to Arestegui in order to make money. In addition, the government had introduced into evidence an authenticated lab report stating that the substance was, in fact, cocaine.
 
 IV. Refusal of Entrapment Defense
 
 28
 Appellant's final ground for appeal is the district court's refusal of his request that the jury be instructed that the defense of entrapment was available to him.[4] In order to receive the benefit of an entrapment instruction a defendant must present evidence that "(1) a government agent induced him or her to commit an illegal act that (2) he or she was not predisposed to commit." United States v. Sotelo-Murillo, 887 F.2d 176, 179 (9th Cir.1989); United States v. Lee, 846 F.2d 531, 534 (9th Cir.1988).
 
 
 29
 Appellant was not approached by a government agent, he was contacted by Arestegui. Nevertheless, he claims entitlement to the instruction on the grounds of "derivative entrapment," i.e. inducement by one induced by a government agent to commit a crime.
 
 
 30
 This Circuit has consistently refused to recognize the defense of derivative entrapment. See, eg., United States v. Stewart, 770 F.2d 825, 831 (9th Cir.1985), cert. denied, 474 U.S. 1103 (1986); United States v. North, 746 F.2d 627 (9th Cir.1984), cert denied, 470 U.S. 1058 (1985), United States v. Cruz, 783 F.2d 1470, cert. denied, 476 U.S. 1174 (1986); United States v. Emmert, 829 F.2d 805 (1987). We discern no need to overturn this line of cases, nor could we in any event.
 
 CONCLUSION
 
 31
 For the foregoing reasons, Appellant's convictions are AFFIRMED.
 
 
 
 *
 The Honorable Robert J. Kelleher, Senior United States District Judge for the Central District of California, sitting by designation
 
 
 **
 This disposition is not appropriate for publication and may not be cited to or by the courts of this circuit except as provided by Ninth Cir.R. 36-3
 
 
 [1]
 During presentation of his case, Appellant took the stand and admitted that he had supplied Arestegui with the cocaine
 
 
 [2]
 When pressed, Arestegui acknowledged that Appellant had given him the cocaine
 
 
 [3]
 Appellant is a native Spanish speaker
 
 
 [4]
 Such an instruction was given as to Arestegui and led to his acquittal